UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DR. GAY M. STORY

VERSUS

OUR LADY OF THE LAKE
PHYSICIAN GROUP

CV. NO. 17-651-JWD-RLB

JUDGE JOHN W. deGRAVELLES

## RULING AND ORDER

### I. INTRODUCTION

Before the Court is a Motion for Partial Dismissal of the Amended Complaint filed by Defendant Our Lady of the Lake Physician Group ("Defendant"). ("Motion," Doc. 24). Plaintiff Dr. Gay M. Story ("Plaintiff") has filed an Opposition, (Doc. 27), and Defendant has filed a Reply in further support of the Motion, (Doc. 28).

For the reasons discussed below, the Motion is granted.

### II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a 46-year-old African-American woman who started working for Defendant on March 8, 2015. (Doc. 19 at 2). Plaintiff's "base salary was working for a base compensation under the initial two-year term of the employment agreement." (*Id.*). After that, Defendant had discretion to convert her base compensation from a fixed salary to a compensation model based on other metrics. (*Id.*).

In mid-October 2016, Plaintiff asked to meet with Dr. Curtis Chastain, Defendant's President and Medical Director, to discuss Plaintiff's upcoming contract renewal in March 2017. (*Id.*). Plaintiff told Chastain that she was concerned about her "patient numbers" affecting her compensation. (*Id.*). Chastain asked Plaintiff to draft an email so that there would be "something

to discuss with the Board." (*Id.*). Plaintiff sent Chastain an email asking to negotiate a "partially set salary" to allow her time to build up her patient population. (*Id.*). She also cited reasons why she could not work a full-time workweek, citing "chaos and turmoil," poor supervision, understaffing, and other issues in the clinic where she worked. (*Id.* at 2-4).

After sending the email, Plaintiff received an email indicating that Chastain and Vice President of Operations Ladonna Green wanted to meet with Plaintiff and discuss her request, and this meeting occurred on November 11, 2016. (*Id.* at 4). Present at the meeting were Plaintiff, Chastain, Green, and Vice President of Finance Jamy Richard. (*Id.*). During the meeting, Chastain, Green, and Richard "[i]mmediately" began attacking Plaintiff about her patient numbers and falsely accused her of denying patient referrals. (*Id.*). Plaintiff tried to "steer" the conversation back toward issues identified in her email, but Chastain stood up, opened the door, and said "this meeting is over." (*Id.*). Plaintiff contends that she had received no reprimands and had no record of malpractice or disciplinary action before the meeting. (*Id.*).

Thirty minutes later, Green called to advise Plaintiff that she was being placed on administrative leave because Plaintiff had not agreed with "the proposal." (*Id.*). Plaintiff asked, "what proposal?," and Green said Plaintiff was "insubordinate as she raised her voice." (*Id.*).

On November 14, 2016, Green told Plaintiff that Defendant had decided to terminate her without cause. (*Id.* at 5). The next day, Plaintiff submitted an appeal letter "raising allegations of unlawful discrimination against her in placing her on administrative leave and attempting to discharge her without due process and for treating her rudely and unfairly in the November 11 meeting." (*Id.*).

On November 22, 2016, Plaintiff received a letter from Vice President of Human Resources Ann Bollone informing Plaintiff that she was terminated "effective November 22, 2016." (*Id.*).

Defendant has sent three separation notices concerning the termination to the Louisiana Workforce Commission; Plaintiff alleges that these notices have been inconsistent. (*Id.* at 5-6). Specifically, Plaintiff maintains that the separation notices variously represented that her date of separation was either November 15, 2016 or November 22, 2016; and that Plaintiff's "reason for separation" was either "terminated/fired" or "resigned/quit." (*Id.*).

Plaintiff alleges retaliation; discrimination on account of age, race, and sex; and a state tort claim under Louisiana Civil Code article 2315. (*Id.* at 6-7). The paragraph stating Plaintiff's retaliation claim reads as follows:

> [Plaintiff] reiterates the allegations set forth in paragraphs 1 through 25 above. [Plaintiff] complained in writing to high-ranking officials about unlawful discrimination against her, and [Defendant] singled [Plaintiff] out for adverse treatment by firing her in direct retaliation for her complaints of unlawful discrimination.

(*Id.* at 7).

Plaintiff filed a Charge of Discrimination with the EEOC and received a Notice of Right to Sue letter dated September 5, 2017. (Doc. 7-1). This lawsuit was filed September 18, 2017. (Doc. 1).

### III. DISCUSSION

#### A. General Standards

In *Johnson v. City of Shelby, Miss.*, ⸻ U.S. ⸻, 135 S. Ct. 346 (2014), the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

### B. Parties' Arguments

In its Motion, Defendant first argues that Plaintiff fails to state a retaliation claim.[1] (Doc. 24-1 at 7-9). Plaintiff's retaliation claim alleges that Plaintiff complained in writing about "unlawful discrimination" and that she was fired for these complaints. (Doc. 19 at 7). Defendant argues that, although Plaintiff has "downplayed" the significance of the November 14 "termination meeting" in the Amended Complaint (as compared to her EEOC charge or her earlier Complaint), she acknowledges that her complaints of discrimination came after the decision to terminate her. (Doc. 24-1 at 7-8). Therefore, argues Defendant, Plaintiff's protected activity did not cause her termination, and her retaliation claim fails. (*Id.* at 8-9). Defendant also seeks dismissal of Plaintiff's claim under Article 2315 because "[t]he only statutes allegedly violated pertain to Plaintiff's allegations of employment discrimination and retaliation," and the specific remedies provided for in Louisiana's employment discrimination statutes supersede and replace any general remedy available under Article 2315. (*Id.* at 9-11).

In opposition, Plaintiff argues that she was not "officially" fired until November 22, 2016, after her letter complaining of discrimination, and her retaliation claim therefore does not fail on causation grounds. (Doc. 27 at 5-7). She also argues that a negligence cause of action is available under Article 2315 for breach of Defendant's duties under statutory law. (*Id.* at 7-9).

In reply, Defendant reasserts that its decision to terminate Plaintiff was made by November 14, 2016, and, regardless of Plaintiff's official date of termination, Plaintiff's subsequent complaints of discrimination could not have been "the impetus" for Defendant's decision. (Doc.

---

[1] Roughly half of Defendant's memorandum in support of the Motion is dedicated to providing the Court with Defendant's account of the facts giving rise to this case. As Plaintiff correctly observes and Defendant appears to acknowledge, the account is irrelevant for the Court's current inquiry, which is governed by the allegations of the operative Amended Complaint. (Doc. 27 at 3-4; Doc. 28 at 1 n.1).

5

28 at 1-2). Defendant also reiterates that the remedial scheme provided by Louisiana's employment statutes forecloses a claim under Article 2315 for claims related to employment. (*Id.* at 2-4). Moreover, argues Defendant, because Plaintiff's claim under Article 2315 is for Defendant's alleged negligence, Plaintiff's sole remedy under state law is a worker's compensation action. (*Id.* at 4-5).

### C. Analysis

#### i. Retaliation

To state a retaliation claim, a plaintiff must allege that (1) she engaged in activity protected under Title VII (or other relevant law); (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *See Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (Title VII); *LeBlanc v. Greater Baton Rouge Port Comm'n*, 676 F. Supp.2d 460, 472 (M.D. La. 2009) (applying same standards to Title VII and Section 1981 retaliation claims); *Overman v. City of Baton Rouge*, 2015 WL 224805, at *2 (M.D. La. Jan. 15, 2015) (Louisiana's employment discrimination statutes were patterned after federal statutes and can be interpreted in light of federal law). Retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Chavez v. City of San Antonio*, 657 F. App'x 246, 248 (5th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2533 (2013)).

Defendant argues that Plaintiff's protected activity did not cause her termination, and her retaliation claim fails. (Doc. 24-1 at 8-9). In response, Plaintiff argues that she was not "officially"

fired until November 22, 2016, after her letter complaining of discrimination, and her retaliation claim therefore does not fail on causation grounds. (Doc. 27 at 5-7).

Plaintiff's argument misses the mark. The Amended Complaint describes Plaintiff's protected activity as her complaint "in writing to high-ranking officials about unlawful discrimination[,]" (Doc. 19 at 7), *i.e.*, her November 15, 2016 appeal letter, (*id.* at 5), and the challenged employment action at issue as Defendant firing her, (*id.* at 7). However, according to the Amended Complaint, by the time of her protected activity, she had already been informed that Defendant intended to terminate her without cause. (*Id.* at 5). Regardless of when her termination became "official," the allegations in the Amended Complaint do not plausibly permit an inference that her termination would not have occurred in the absence of her protected activity. *See Chavez*, 657 F. App'x at 248; *see also McCrea v. Traffic Control Prod. of Fla., Inc.*, 2014 WL 4071670, at *7 (M.D. Fla. Aug. 18, 2014) ("McCrae alleges that he was terminated in retaliation for filing the Charge. McCrae is correct that his August 23, 2011 termination date post-dates TCP's receipt of the Charge on August 22nd. However, it is undisputed that on August 15, 2011 Hawkins authored the memo selecting McCrae as one of the five individuals subject to layoffs. Thus, it is undisputed that by the time TCP received notice of the Charge, TCP had already decided to lay off McCrae. Logically, an effect cannot precede its cause and, therefore, McCrae cannot establish the necessary causal link between the Charge and his termination." (citations omitted)); *Durrani v. Valdosta Tech. Inst.*, 810 F. Supp. 301, 307 (M.D. Ga. 1992), *aff'd*, 3 F.3d 443 (11th Cir. 1993) ("The third element, however, cannot be satisfied because there is no causal link between the protected activity and the adverse action. Defendants had already decided not to renew plaintiff's employment contract in January of 1990."); *Larry v. N. Mississippi Med. Ctr.*, 940 F. Supp. 960, 965 (N.D. Miss. 1996), *aff'd in relevant part sub nom. Larry v. Grice*, 156 F.3d 181 (5th Cir. 1998)

7

("However, the plaintiff only sought and was denied leave *after* she had tendered her resignation. Larry had already decided to terminate her employment and had so informed NMMC before she even requested to be allowed to take a leave of absence. The court finds that NMMC's denial of Larry's request for leave was therefore not in retaliation because Larry had previously resigned."); *Nash v. Bd. of Educ. of Dolton W. Sch. Dist. 148*, 492 F. App'x 662, 666 (7th Cir. 2012) ("Nash testified that she did not complain about discrimination until *after* the board had already decided to not honor the contract, the only adverse employment action she says she faced. So the decision not to renew her contract could not have been retaliatory."). Therefore, Plaintiff's retaliation claim is subject to dismissal.

### ii. Article 2315

The parties also dispute the extent to which Louisiana's remedial scheme for employment discrimination supersedes or supplements the general remedy available under Article 2315. As Defendant correctly observes, a judge of the Western District of Louisiana analyzed this and related issues at some length in *Gluck v. Casino America, Inc.,* 20 F.Supp.2d 991 (W.D. La. 1998):

> ***Introduction***
> Plaintiff contends that the same acts of his employer that violate the federal ADEA also give rise to a cause of action under Louisiana's general tort law, La.Civ.Code art. 2315. If Plaintiff proves an ADEA violation, he argues, the violation also constitutes a state law tort. The practical effect of holding that Plaintiff has an Article 2315 cause of action is to permit him to recover the general compensatory damages that are otherwise unavailable under either the federal ADEA or its Louisiana counterpart, the LADEA, found at La.R.S. 23:311, et seq.
>
> ***Guillory, Gil and Baynard: Dictum and Distinction***
> Plaintiff's argument is founded upon language from the Fifth Circuit that, "Article 2315 forbids one to discharge an employee in violation of the Louisiana Constitution or the Federal Constitution or statutes." *Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 826 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). That sweeping statement is, however, *dictum* because the Court concluded in the next sentence that the defendants did not violate Mr. Guillory's constitutional or statutory rights, making the quoted sentence unnecessary to the Court's decision. The statement was also made without any

8

analysis and cited only one case in support, *Gil v. Metal Service Corp.,* 412 So.2d 706 (La.App. 4th Cir.1982), *writ denied,* 414 So.2d 379 (La.). This court's reading of *Gil* finds no support in that case for the position advocated by Plaintiff.

Mr. Gil alleged that he was fired for protesting and refusing to participate in an illegal trade practice committed by his employer. The Fourth Circuit found that Mr. Gil had no cause of action under Article 2315. In the course of its analysis the court acknowledged Louisiana's strong policy of employment-at-will, recognized that there were several (inapplicable) statutory exceptions such as those prohibiting racial discrimination, and ultimately concluded that there was no state or federal statutory or constitutional prohibition against firing an employee who refused to participate in an act he believed illegal. Some plaintiffs have since taken the position that *Gil* implies that if there had been such a prohibition that Article 2315 would have provided a remedy. This court declines to abrogate Louisiana's carefully crafted legislative scheme of remedies for employment discrimination victims by reading *Gil* in such a creative fashion. When the state courts have been less than clear on an issue, a federal *Erie* court must be careful not to mistakenly invent new state law causes of action or remedies where they were not intended.

Another case that is often cited by parties on both sides of this issue is *Baynard v. Guardian Life Ins. Co.,* 399 So.2d 1200 (La.App. 1st Cir.1981). Mr. Baynard argued that the Louisiana Constitution recognizes that age discrimination is a fault and provides, through article 2315, redress for injury caused by that fault. The First Circuit pointed out that the state constitution prohibits discrimination by *laws,* and that Mr. Baynard pointed to no *law* which discriminated against him. Mr. Baynard next argued that the state constitution establishes a state policy that age discrimination is wrong and that the flexible civil law system permits recognition of a cause of action for age discrimination through Article 2315. At the time Mr. Baynard was fired, neither the state nor federal legislatures had enacted age discrimination statutes, although they did so shortly thereafter. The appellate court disagreed with Mr. Baynard and said that to hold in his favor "would constitute an unwarranted intrusion into an area in which the legislature has seen fit to act, albeit too late to be of comfort to plaintiff." *Id.* 399 So.2d at 1202. The court went on to refuse to retroactively apply state or federal age discrimination statutes to the case. The undersigned does not read even an implication in the *Baynard* opinion that had Louisiana's age discrimination act been on the books at the time Mr. Baynard was terminated that Mr. Baynard would also have a remedy under Article 2315. The First Circuit's opinion can more easily be read to indicate that it would defer to the legislature with respect to an issue on which the legislature has expressed its intent.

*District Courts: Split Decisions*
Chief Judge Little has published an opinion in which he held, without discussing *Guillory,* that specific state anti-discrimination statutes are exceptions to the general employment at will doctrine and "eliminate the possibility of Article 2315 liability for employment discrimination." *Caletka v. State Farm,* 936 F.Supp. 380, 382 (W.D.La.1996). *See also, Ladner v. Alexander & Alexander, Inc.,* 94 CV 1996

(W.D.La.1996) (Little, C.J.) (dismissing claims under Article 2315 that alleged violation of the Family and Medical Leave Act). Chief Judge Little noted in the unpublished *Ladner* opinion that the language in *Guillory* upon which Plaintiff relies "announced a new and surprising rule of law that would apply to facts not actually before [the Fifth Circuit]. This was dictum." Judge Polozola, citing *Caletka* and *Baynard,* has also held that "Article 2315 does not create liability for employment discrimination." *Hornsby v. Enterprise Transportation Company,* 987 F.Supp. 512, 515 (M.D.La.1997).

Other district courts, however, have applied the *Guillory dictum* and refused to dismiss such claims. *See Ray v. Liberty Life Ins. Co.,* 94 CV 0226 (W.D.La.07/14/95) (Hunter, J.); *Roper v. Exxon,* 97–790–A (M.D.La.11/24/97) (Parker, J.); *Israel v. Industrial Specialty Contractors, Inc.,* 95–527–A (M.D.La.01/12/96) (Parker, J.). None of these district court opinions find any other support for the cause of action beyond the *dictum* in *Guillory.* Judge Hunter stated in *Ray* that he found "little or no support [in *Gil*] for the Fifth Circuit's expansion of Article 2315."

*Statutory Interpretation: Specific Over General*
The issue before the court is whether the Supreme Court of Louisiana would interpret Article 2315 to provide an additional remedy for violations of the ADEA. Plaintiff has cited no Louisiana decision that has actually held that the violation of a federal or state employment discrimination statute creates a concomitant tort claim under Article 2315. He has also cited no case that would indicate that the Louisiana courts are no longer strictly applying the employment at will doctrine except in cases of an employment contract or when a specific statutory limitation like the ADEA or Title VII is applicable. The absence of such authority and the application of principles of statutory interpretation compel a conclusion that the Supreme Court would not interpret Article 2315 in such a fashion.

A well-known principle of statutory construction is that when there is both a general law and a specific law that address the same subject matter, the more specific legislative enactment should govern. *Kennedy v. Kennedy,* 699 So.2d 351, 358 (La.1996) (in dispute over a usufructuary's right to cut timber, general Code articles regarding use of fruits by usufructuary must bow to specific article governing timberlands); *Horil v. Scheinhorn,* 663 So.2d 697, 699–700 (La.1995) (medical malpractice plaintiff's case dismissed for failure to comply with specific statutory provisions applicable to his case although he complied with general provisions); *Lieber v. Caddo Levee District,* 660 So.2d 188 (La.App. 2d Cir.1995) (DOTD's authority to acquire property for "limited-access highways" was governed by specific statute regarding same, rather than general statute applicable to acquisitions for "any highway").

The undersigned is of the opinion that the Louisiana legislature intended that in cases of age discrimination a plaintiff's state law remedies are limited to those permitted by the claim-specific LADEA, rather than the broad, general tort remedy

of Article 2315. It would serve little purpose for the Louisiana legislature to specifically provide in § 313 of the LADEA that victims of age discrimination can under state law recover only "back pay, benefits, reinstatement, reasonable attorney's fees, and court costs" if the plaintiff can merely invoke Article 2315 and automatically gain access to the full range of general and compensatory damages available under tort law. When a plaintiff invokes Louisiana law to support a claim of age discrimination, the court must apply the more specific LADEA and its tailored remedial scheme rather than the broad tort laws and their unlimited potential for compensatory damages. This Plaintiff makes no reliance upon the LADEA or any Louisiana law other than Article 2315.

To adopt the rule advocated by Plaintiff would render the legislature's enumeration of recoverable damages completely meaningless. It would also open the door to an argument that, by mere invocation of Article 2315, all employers and even supervisors are suddenly subject to unlimited tort liability under the substantive prohibitions of the ADEA, LADEA, Title VII and similar federal and state statutes that apply on their face only to employers of more than a minimum number of employees. After all, Article 2315 has no such limitation. That argument has already been raised in *Caletka, supra.* It is also inevitable that a plaintiff would argue that he may circumvent the specific limitation periods and administrative prerequisites to suit under an anti-discrimination statute by merely styling his suit as a claim under Article 2315, which has a generous one-year prescriptive period and no administrative exhaustion requirement. Other statutes that, like the LADEA or Title VII, limit the kinds or amount of damages recoverable for a violation would effectively be rewritten by the federal judiciary to permit recovery of all forms of compensatory damages available under Article 2315.

If the legislature had intended such results it would have merely enacted substantive duties and prohibitions, and not bothered to waste any ink or debate on administrative requirements, limitations periods and limited remedies. Alternatively, the state legislature could have chosen not to enact any specific legislation to address age discrimination and left it to the courts to decide whether they should fashion an Article 2315 remedy for age discrimination as part of the state's tort jurisprudence. The legislature chose instead to enact the very specific LADEA to protect persons from age discrimination, manifesting its intent that those persons who seek redress under Louisiana law find their remedy in that legislation.

The Louisiana legislature frequently imposes duties on employers and specifies the damages, if any, recoverable in a civil action for a breach of the duty. *See* La.R.S. 42:1169 (whistle blower public employees limited to reinstatement and recovery of income and benefits lost during period of discrimination); La.R.S. 23:1361(capping recovery for employees fired for filing workers compensation claim to one year's earnings); and La.R.S. 23:966 (prohibiting discrimination against employees who smoke and imposing $250 civil fine for violation). Certainly, the legislature did not intend that a person could state a state law claim that abrogates those limits by mere invocation of Article 2315. The same rationale prohibits an Article 2315 claim for

11

age discrimination that would abrogate the LADEA's limitation on recoverable damages.

*Analogous Reasoning Is Used In § 1983 Jurisprudence*
Federal courts have employed similar reasoning to preclude the use of 42 U.S.C. § 1983 to eviscerate the administrative requirements and limited remedies provided for by specific federal acts. Section 1983 provides, *inter alia,* a cause of action against persons acting under color of state law who deprive a person of rights afforded by federal "laws". Read literally, § 1983 would grant a cause of action for violation of any federal law. The courts have consistently held, however, that the general § 1983 is supplanted when a specific federal law provides remedial devices sufficiently comprehensive to demonstrate congressional intent to preclude the intent of a remedy under § 1983. When the specific statute has its own remedial scheme, the plaintiff is ordinarily precluded from bypassing that scheme and asserting a derivative claim of the specific statute through § 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Assoc.,* 453 U.S. 1, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981) (elaborate enforcement provisions precluded implied private right of action and supplanted any remedy that would otherwise be available under § 1983); *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539 (5th Cir.1997) (public sector employee may assert claims of employment discrimination under both Title VII and § 1983 only if the § 1983 claim is supported by a federal right independent of Title VII); and *Lakoski v. James,* 66 F.3d 751 (5th Cir.1995), *cert. denied,* 519 U.S. 1035, 117 S.Ct. 598, 136 L.Ed.2d 525 (1996) (plaintiff could not assert claim under Title IX or derivatively through § 1983 when Title VII provided specific remedial scheme for the claim). These decisions are obviously not controlling as to Louisiana law, but they demonstrate how the federal courts have effectively addressed very similar issues that arise with some frequency in the federal system.

*Conclusion*
This opinion should not be read to mean that an employee may never state a claim against an employer under Article 2315. A plaintiff seeking to proceed against his employer under Article 2315 need only allege the breach of a legally recognized duty (such as the prohibition against intentional infliction of severe emotional distress) for which the state legislature has not specifically provided a remedial scheme. This Plaintiff does not urge any basis for liability under Article 2315 other than derivative application of the ADEA. The Louisiana legislature has enacted a specific remedial system, in the form of the LADEA, for redressing claims of age discrimination, for which limited remedies are available. The specific LADEA supplants any state law claim for age discrimination under the more general Article 2315.

*Gluck v. Casino Am., Inc.*, 20 F. Supp. 2d 991, 992–95 (W.D. La. 1998).

The Court generally agrees with *Gluck*'s analysis: well-settled principles of statutory construction establish that Louisiana's specific framework for addressing employment discrimination claims, like those raised in this case, supersedes the general liability provision in Article 2315. Plaintiff's arguments to the contrary rely principally on *Israel*, *Ray*, *Guillory*, and *Gil*, all of which are addressed in and distinguished or reasonably rejected by *Gluck*.[2]

On the foregoing basis, Plaintiff's claim under Article 2315 is subject to dismissal.

### iii. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely give[n] . . . when justice so requires." The Fifth Circuit has stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004)* ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district

---
[2] Having so concluded, the Court deems it unnecessary to reach Defendant's argument concerning the applicability of Louisiana's worker's compensation bar.

court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

The operative pleading in this action is an Amended Complaint. (Doc. 19). Notably, the Amended Complaint was filed after and in apparent partial response to an earlier Motion to Dismiss raising the same deficiencies addressed in the instant Motion. (*See* Doc. 17-1 at 7-8, 10-12). Plaintiff has therefore had an opportunity to address these deficiencies but has not satisfactorily done so. Plaintiff's pleadings and Opposition also do not suggest that there may be additional facts available that could render the claims at issue in the Motion meritorious. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009) (leave to amend may properly be denied where amendment would be futile). In light of the foregoing facts and legal authorities, the Court concludes that granting leave to amend is unwarranted.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion (Doc. 24) is **GRANTED.** Plaintiff's retaliation claim and claim under Article 2315 are **DISMISSED** with prejudice and without leave to amend.

Signed in Baton Rouge, Louisiana, on April 20, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**